23-7586-cv
*Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2023

(Argued: June 27, 2024    Decided: February 6, 2025)

Docket No. 23-7586-cv

CARDINAL MOTORS, INC.,
                    *Plaintiff-Appellant,*

- *against* -

H&H SPORTS PROTECTION USA INC.,
                    *Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Before:

    CHIN and SULLIVAN, *Circuit Judges*, and KELLY, *Judge*.[*]

---

[*]    Judge Claire R. Kelly of the United States Court of International Trade, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, *J.*), granting Defendant-Appellee's motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint in this action for trade dress infringement and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and analogous state laws. The district court held that Plaintiff-Appellant failed in the operative complaint to articulate with precision the trade dress of its motorcycle helmet, including how the trade dress was distinct. We conclude that the district court erred in its application of the articulation requirement in trade dress infringement cases.

VACATED AND REMANDED.

————————————————

ANTHONY H. HANDAL, Handal & Morofsky, LLC, Norwalk, CT, *for Plaintiff-Appellant*.

MICHAEL LANE (Brett M. Weaver, *on the brief*), Lewis Kohn & Walker, LLP, San Diego, CA, and Stefan Savic, Reinhardt Savic Foley LLP, New York, NY, *for Defendant-Appellee*.

————————————————

CHIN, *Circuit Judge*:

We have long required plaintiffs pleading claims of trade dress infringement under the Lanham Act to articulate precisely the features of their trade dresses. *See, e.g.*, *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380-81 (2d Cir. 1997); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116-18 (2d Cir. 2001). We clarify the contours of that requirement here.

Plaintiff-Appellant Cardinal Motors, Inc. ("Cardinal") brought this action in 2020, alleging that Defendant-Appellee H&H Sports Protection USA Inc. ("H&H") unlawfully copied its motorcycle helmet. The operative complaint asserted two counts under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), each alleging both unfair competition and trade dress infringement, and two counts of unfair competition under analogous state laws. In pleading those claims, Cardinal advanced two alternative theories of its trade dress, one called the "General Trade Dress" and the other called the "Detailed Trade Dress."

The district court dismissed Cardinal's complaint with prejudice on the basis that Cardinal "fail[ed] to sufficiently allege a precise expression of the trade dress, including how that trade dress is distinct." *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, No. 20-CV-07899-PAC, 2023 WL 6257938, at *5

(S.D.N.Y. Sept. 26, 2023). That conclusion was based only on the district court's assessment of Cardinal's General Trade Dress theory, as the court held that it need not consider the sufficiency of the Detailed Trade Dress because that theory borrowed heavily from the General Trade Dress theory. *Id.*

We hold that the district court erred in dismissing Cardinal's trade dress claims for two reasons. First, this Court's requirement that a plaintiff articulate precisely the features of its trade dress at the pleading stage does not also require plaintiffs to articulate the distinctiveness of that trade dress. Second, it was error for the district court to assume the inadequacy of the Detailed Trade Dress based on the purported inadequacy of the General Trade Dress. We hold that both trade dresses were pleaded with the requisite precision. Accordingly, we VACATE the judgment and REMAND the case for further proceedings.

## BACKGROUND

We accept the material facts in the operative complaint as true and draw all reasonable inferences in Cardinal's favor. *See Miller v. United States ex rel. Miller*, 110 F.4th 533, 538 (2d Cir. 2024).

### I. *The Facts*

Cardinal designs motorcycle helmets and licenses them for production and sale by other companies. For years, Cardinal has exclusively

licensed the design of its helmet, "The Bullitt," to Bell Sports, Inc. ("Bell"), which

is itself "one of the largest manufacturers of motorcycle and bicycle helmets in

the United States." App'x at 276-77 ¶ 18. The Bullitt has had significant

commercial success since it first hit the market in 2014 and currently serves as

"the flagship of Bell's motorcycle helmet product line." *Id.* at 277 ¶ 18; *see also id.*

at 272 ¶ 14. Sold in "flat" and "bubble" versions, The Bullitt "is one of the most

popular helmets made by Bell." *Id.* at 276-77 ¶ 18.

       The Bullitt's popularity is attributable to its unique look and feel.

Specifically, the helmet has two alternative trade dresses that render it

distinguishable from other helmets. Its "General Trade Dress" consists of

> [t]he features of the sculptural and graphic design of
> The Bullitt (namely its distinctive general overall shape
> with substantially curved top helmet shell shape, with
> the substantially curved top transitioning substantially
> smoothly into a thin chin protector extending roughly
> perpendicular to an imaginary plane defined by the
> helmet shell base; a flattish helmet shell base; a
> relatively large eyeport height (compared to the height
> of the chin protector); a single-level non-stepped chin
> bar surface; a thin chin bar height substantially thinner
> than the eyeport; a substantial rear overhang beyond a
> theoretical vertical to the shell base giving the helmet a
> squat appearance; and a large diameter pivot point
> escutcheon . . . ) . . . .

*Id.* at 272-73 ¶ 17. Its "Detailed Trade Dress," meanwhile, consists of

[t]he look of the sculptural and graphic design of The Bullitt (namely its distinctive general overall shape with substantially curved top helmet shell shape, with the substantially curved top transitioning substantially smoothly into a thin chin protector extending substantially perpendicular to an imaginary plane defined by the helmet shell base; a flattish helmet shell base; relatively large eyeport height as compared to the chin bar height; single-level non-stepped chin bar surface; relatively thin chin bar height; substantial rear overhang beyond a theoretical vertical to the shell base; and large diameter metallic-finished pivot point escutcheon, and the Bullitt's metallic reflective borderline on the bottom of the helmet and metallic reflective borderline near the forward opening, decorative leather overlay on top of the front opening, brown leather-like arc segments, metallic bottom trim and a brown leather trim patch, internal jig saw puzzle part V-shaped cheek pads with their combination of brown shiny leather and suede leather, and decorative suede leather overlay on the back of the helmet (a design element that resonates with the decorative leather overlay on the front of the helmet) . . . ) . . . .

*Id.* at 284-85 ¶ 31. These design features make The Bullitt -- shown below -- distinct and serves as an indication of its origin.



*Id.* at 276.

As relevant here, H&H manufactures and sells a motorcycle helmet called the "Torc T-1." Similar to The Bullitt, the Torc T-1 comes in flat and bubble versions. *Id.* at 277 ¶ 19. And like The Bullitt, the Torc T-1 features metallic borders around the bottom and front opening of the helmet, "large decorative roundhead slotted screws with oversized decorative escutcheons . . . to secure the plastic visor," *id.* at 278 ¶ 20, and cheek pads made with a "combination of brown shiny leather and suede leather," *id.* at 280 ¶ 24. The two helmets also share similar technical specifications. *Id.* at 278 ¶ 21, 279 ¶ 22. The Torc T-1 and The Bullitt are shown below.

 

|            The Bullitt            |            Torc T-1            |

*Id.* at 276.  Cardinal never authorized H&H to make any helmet incorporating

The Bullitt's General Trade Dress or Detailed Trade Dress.

## II.    *Procedural History*

Cardinal commenced this action on September 24, 2020, alleging that

H&H's Torc T-1 unlawfully copied The Bullitt.  As relevant here, Cardinal's

initial complaint principally alleged claims of unfair competition and trade dress

infringement under federal law.  App'x at 15-18.  Cardinal thereafter amended its

complaint on two separate occasions in an attempt to properly plead its trade

dress claims, but the district court dismissed both amended complaints without

prejudice because "each failed to adequately plead the claimed trade dress with

precision or with allegations of its distinctiveness."  *Cardinal Motors*, 2023 WL

6257938, at *1 (summarizing procedural history).

At issue in this appeal is the third amended complaint (the "TAC"), which Cardinal filed on October 4, 2022. To address the deficiencies in its prior complaints, Cardinal sought to emphasize The Bullitt's unique appearance in the TAC by articulating the two alternative trade dresses laid out above -- the General Trade Dress and the Detailed Trade Dress. The TAC asserted four counts: (1) federal unfair competition and product trade dress infringement based on the General Trade Dress; (2) federal unfair competition and product trade dress infringement based on the Detailed Trade Dress; (3) common law unfair competition under New York law; and (4) statutory and common law unfair competition under California law. App'x at 287-92.

On September 26, 2023, the district court granted H&H's motion to dismiss the TAC with prejudice. That dismissal disposed of Cardinal's Lanham Act claims in three steps.

First, the court dismissed claims premised on the General Trade Dress because Cardinal failed "to sufficiently [articulate] a precise expression of the trade dress, including how that trade dress is distinct." *Cardinal Motors*, 2023 WL 6257938, at *5. In other words, the district court assumed that articulating a precise expression of a trade dress also required alleging its distinctiveness. The

- 9 -

district court reasoned that Cardinal failed to allege the distinctiveness of the General Trade Dress because it "encompasse[d] a description of the entire helmet and each of its components, making it so detailed that it render[ed] the claimed trade dress too broad." *Id.* at *4; *see also id.* at *5. Accordingly, because Cardinal failed to allege The Bullitt's distinctiveness, the district court concluded that Cardinal failed to allege a precise articulation of the General Trade Dress and failed to allege a plausible trade dress claim. The court thus dismissed Cardinal's trade dress infringement claim premised on the General Trade Dress without determining whether Cardinal plausibly alleged the elements of the claim. *Id.* at *5.

Second, the district court declined to separately consider whether the Detailed Trade Dress satisfied the same articulation requirement because the Detailed Trade Dress "rest[ed] in substantial part on the General Trade Dress upon which [Cardinal] fail[ed] to state a claim." *Id.* Instead, the court summarily concluded that claims based on the Detailed Trade Dress "fail[ed] for the same reasons." *Id.*

Third, the district court dismissed Cardinal's unfair competition claims based on state law, quoting a Second Circuit case on supplemental

- 10 -

jurisdiction and reasoning that "if all federal claims are dismissed before trial, the state claims should be dismissed as well." *Id.* (quoting *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004)).

Judgment was not entered in a separate document.[1]  Cardinal filed a notice of appeal on October 23, 2023.

This appeal followed.

## DISCUSSION

Cardinal contends that the district court erred by concluding that the General Trade Dress and Detailed Trade Dress failed to satisfy this Court's articulation requirement.  Accordingly, Cardinal claims that the district court improperly dismissed the TAC.  We agree.

---

[1]     The district court did not enter judgment in a separate document, as required by Federal Rule of Civil Procedure 58(a).  That oversight, however, "does not affect the validity of an appeal from that judgment or order."  Fed R. App. P. 4(a)(7)(B).  Where no separate document has been filed, we consider judgment entered after "150 days have run from the entry in the civil docket" of the order at issue.  Fed. R. Civ. P. 58(c)(2)(B); *see Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).  We similarly treat a notice of appeal filed by that date to be timely.  *See* Fed. R. App. P. 4(a)(2).  Moreover, "the separate document rule is deemed to have been waived and the assumption of appellate jurisdiction is proper" when (1) "an order appealed from clearly represents a final decision," and (2) "the appellee[] do[es] not object to the taking of an appeal."  *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 108 n.1 (2d Cir. 2024) (quoting *Selletti v. Carey*, 173 F.3d 104, 109-10 (2d Cir. 1999)).  Here, the district court granted H&H's motion to dismiss with prejudice on September 26, 2023, and H&H explicitly "waive[d] any objection to the assumption of appellate jurisdiction here."  Appellee's Br. at 2.  We therefore properly exercise jurisdiction over this case pursuant to 28 U.S.C. § 1291.

I.    *Standard of Review*

We review a district court's dismissal of a complaint for failure to state a claim *de novo*.  *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 53 (2d Cir. 2022).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

II.    *Applicable Law*

We discuss the protections against trade dress infringement embodied in Section 43(a) of the Lanham Act, the elements of a trade dress claim based on the design of a product, and the articulation requirement for trade dress infringement claims.

A.    **Trade Dress Protection Under Section 43(a) of the Lanham Act**

Section 43(a) of the Lanham Act provides a right of action against any person who "uses in commerce any word, term, name, symbol, or device, or any combination thereof," in a way that "is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods."  15 U.S.C. § 1125(a)(1).  Trade dress -- a term that generally encompasses the "look" of a product -- is a "symbol" or "device" for purposes of this section.

- 12 -

*See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000). Accordingly, "Section 43(a) of the Lanham Act protects trade dress," *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 118 (2d Cir. 2001), making it "one of the few provisions [of the act] that goes beyond trademark protection," *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003).

Although the term "trade dress" was originally meant to encompass only the packaging of products, courts have expanded its meaning to also encompass "the design or configuration of the product itself." *Yurman Design*, 262 F.3d at 114*; see also Samara Bros.*, 529 U.S. at 209. At the same time, however, "courts have exercised particular 'caution' when extending protection to product designs," because carelessly granting protection to ordinary product designs "would create a monopoly in the goods themselves" and "hamper efforts to market competitive goods." *Landscape Forms*, 113 F.3d at 380*; see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32-33 (2d Cir. 1995) (noting that trade dress law protects only "the concrete expression of an idea" and not "an idea, a concept, or a generalized type of appearance"). Over time, the courts have crafted specific pleading requirements for trade dress infringement claims based on product design.

B.    **The Elements of a Product-Design Trade Dress Infringement Claim**

To plead a claim for trade dress infringement based on product design, a plaintiff must plead that (1) its product design is distinctive, (2) there is a likelihood of confusion between its product design and that of the defendant, and (3) its product design is not functional. *See Yurman Design*, 262 F.3d at 115-16. These requirements are rooted in statute, *see* 15 U.S.C. § 1125(a), but both the Supreme Court and this Court have elaborated upon them, *see, e.g., Samara Bros.*, 529 U.S. at 209-10; *Yurman Design*, 262 F.3d at 115-16; *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012); *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114-16 (2d Cir. 2006).

Only the first element -- distinctiveness -- is relevant to this appeal. Generally, a plaintiff may plead distinctiveness by alleging that its trade dress has either inherent or acquired distinctiveness. *Samara Bros.*, 529 U.S. at 210-11; *Yurman Design*, 262 F.3d at 115. A mark has inherent distinctiveness when it "serves to identify a particular source," such as "Camel" in Camel cigarettes and "Tide" in Tide laundry detergent. *Samara Bros.*, 529 U.S. at 210-11 (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Alternatively, a mark has acquired distinctiveness "if it has developed secondary meaning, which occurs

- 14 -

when, 'in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself,'" such as "Apple" in Apple computers. *Id.* at 211 (alteration adopted) (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982)). Although trademark plaintiffs may base their infringement claims on either type of distinctiveness, a trade dress plaintiff specifically alleging infringement of its product design must always plead -- and eventually prove -- acquired distinctiveness. *See id.* at 216 ("[A] product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."); *Yurman Design*, 262 F.3d at 115 ("The product design plaintiff . . . must always make th[is] second, more difficult showing.").

At bottom, the distinctiveness requirement exists because a mark is only protectable when it is distinctive and not generic or overbroad. *See Christian Louboutin*, 696 F.3d at 216. In other words, a trade dress that is "overbroad" or "generic" is *per se* not distinctive and therefore not protectable. *Yurman Design*, 262 F.3d at 115; *see also Two Pesos*, 505 U.S. at 768. Indeed, we have stressed as much on several occasions. In *Jeffrey Milstein*, for example, a company sought an injunction to prevent the defendant from copying the trade dress of its greeting cards, which comprised of "straight-on, strong photographic, glossy images of

- 15 -

animals, persons or objects on die-cut cards that are cut without bleed of any kind." 58 F.3d at 33 (quoting appellant's reply brief at 6-7). The district court concluded that this trade dress was generic because it "consist[ed] solely of common and functional elements," *id.* at 30, and we affirmed, holding also that "even [the requisite] showing of secondary meaning could not make that dress 'distinctive'" or protectable, *id.* at 34. *See also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:6.50 (5th ed. 2024) (observing that in *Jeffrey Milstein*, this Court "created a new category of things not capable of trade dress protection" that is "dubbed 'generic'").[2]

## C.    The Articulation Requirement

Before a court may evaluate the three elements of a trade dress infringement claim, however, a plaintiff must clearly articulate what it seeks to protect. Accordingly, separate from -- and in addition to -- pleading the three elements of its claim, a trade dress plaintiff must also articulate with precision

---

[2]        We have similarly concluded that the cosmetics industry's use of black, rectangular compacts and the soda industry's use of green cans for lime-flavored drinks have rendered both types of packaging "generic and hence unprotected." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000 (2d Cir. 1997) (first citing *Mana Prods., Inc. v. Columbia Cosmetics Mfg., Inc.*, 65 F.3d 1063, 1070 (2d Cir. 1995); and then citing *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 583 (2d Cir. 1993)).

the specific components of its claimed trade dress in the complaint. *See Landscape Forms*, 113 F.3d at 381; *Yurman Design*, 262 F.3d at 116-18.

This so-called "articulation requirement" emerges from this Court's opinion in *Landscape Forms*, where we recognized that "there is no question that trade dress may protect the 'overall look' of a product." 113 F.3d at 381. In so doing, however, we also clarified that it is often a combination of components, rather than individual ones, that make up the overall look of a product and that renders the product's trade dress protectable. *Id.* And for that reason, we stressed the importance of articulating each of those components with precision and specificity: "[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its distinct dress." *Id.* The articulation requirement thus requires trade dress plaintiffs bringing claims of product design infringement to separate out and clearly identify in a list the discrete components that make up its trade dress. *See* McCarthy, *supra*, § 8:3; *Yurman Design*, 262 F.3d at 116 ("[A] plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress.").

As we explained in *Landscape Forms* and again in *Yurman Design*, the articulation requirement makes sense for several reasons. First, a precise articulation of the claimed trade dress provides a crucial guidepost for courts and juries to evaluate the merits of an infringement claim. *Landscape Forms*, 113 F.3d at 381 ("Without such a precise expression of the character and scope of the claimed trade dress, . . . courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market."); *Yurman Design*, 262 F.3d at 117 (noting that no juror can evaluate a claim "without knowing precisely what the plaintiff is trying to protect"). Second, the lack of a precisely articulated trade dress may indeed reveal that a plaintiff's infringement claim should fail because it is "pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381; *see also Yurman Design*, 262 F.3d at 117 ("The identification of design elements that compose the asserted trade dress will . . . assist in winnowing out claims that are overbroad as a matter of law."). Third, and perhaps most importantly, courts will be "unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection." *Landscape Forms*, 113 F.3d at 381; *see also Yurman Design*, 262 F.3d at 117 (noting

that competitors likely would not know which of its new designs would be subject to challenge "if a court is unable to identify what types of designs will infringe a trade dress").

Yurman Design itself provides a good illustration of this requirement. In that case, the jewelry company David Yurman ("Yurman") brought a trade dress infringement claim against another designer for allegedly copying its product line of twisted cable pieces. Yurman Design, 262 F.3d at 107. Yurman prevailed at trial, but this Court reversed the judgment because Yurman had failed to identify the specific components of its trade dress. Id. at 107-08, 117-18. To begin, it was not sufficient for Yurman to argue that "its trade dress could be discerned from an entire product line of 18 different Yurman pieces," id. at 114, because this articulation did not specify any component, common to all products in the product line, for which Yurman sought protection, id. at 118. Similarly, Yurman's best articulation of its trade dress -- "the artistic combination of cable [jewelry] with other elements" -- did not specify any component and was "altogether too broad to be a protectable, source-identifying expression." Id. at 117-18 (alteration in original) (quoting appellee's brief at 33). This Court thus

concluded that the plaintiff's "failure to articulate the dress required dismissal of the Lanham Act claim as a matter of law." *Id.* at 114.

Although *Yurman Design* provides an excellent example of this Court's articulation requirement, that case did not clearly distinguish the articulation requirement from the core requirement that a plaintiff plead -- and eventually show -- the distinctiveness of its trade dress. And because we originally described the articulation requirement in the context of inherent distinctiveness, the distinction between the two has been blurry, and our prevailing explanation of the articulation requirement still refers to distinctiveness. *See Landscape Forms*, 113 F.3d at 381 ("[F]ocus on the overall look of a product does not permit a plaintiff to dispense with an articulation of the specific elements which comprise its *distinct* dress." (emphasis added)); *id.* ("Courts will also be unable to shape narrowly-tailored relief if they do not know what *distinctive* combination of ingredients deserves protection." (emphasis added)). This had led courts -- including panels of this Court in nonbinding decisions -- to erroneously incorporate distinctiveness into the articulation requirement. *See, e.g.*, *APP Grp. (Can.) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *1 (2d Cir. Jan. 9, 2024) (summary order); *Int'l Leisure Prods., Inc. v.*

*FUNBOY LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) (summary order); *Eliya, Inc. v.*

*Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (summary order); *GeigTech*

*E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 276-77 (S.D.N.Y. 2018).

Our sister circuits, however, have adopted and regularly apply

articulation requirements that are separate and independent from

distinctiveness.  At least one -- the Sixth Circuit -- has explicitly distinguished the

articulation requirement from the distinctiveness requirement.  *See, e.g., Gen.*

*Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 415-16 (6th Cir. 2006) ("Before

addressing the application of the trade dress infringement elements, we must

first address [defendant's] challenge to . . . what that trade dress is comprised

of.").  Other courts, meanwhile, at a minimum analyze a plaintiff's articulation of

the components of their claimed trade dress separately from its distinctiveness.

*See, e.g., Joason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1213-

14 (9th Cir. 2023); *Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 637, 639 (10th

Cir. 2022); *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 310 (3d Cir. 2014)

(referring to distinctiveness but dismissing a claim because the plaintiff "failed to

give [d]efendants adequate notice of what overall look it wishes to protect"); *Test*

*Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 567 (5th Cir. 2015)

(finding that the plaintiff did not allege a trade dress infringement claim because the plaintiff did not provide any "allegations describing the content or overall image of [the plaintiff's] website").

We thus clarify that distinctiveness is independent of the articulation requirement. Distinctiveness is an *element* of a trade dress infringement claim to be pleaded in a complaint and shown at trial. *See Samara Bros.*, 529 U.S. at 210. The articulation requirement, by contrast, is a pleading requirement under which plaintiffs must articulate precisely the *components* that compose their claimed trade dress. *See Yurman Design*, 262 F.3d at 116. And because the prevailing purpose of the articulation requirement is to help courts (and eventually juries) evaluate the elements of a trade dress claim, *see Landscape Forms*, 113 F.3d at 381; *Yurman Design*, 262 F.3d at 117, a plaintiff meets this requirement by describing with precision the components -- *i.e.*, specific attributes, details, and features -- that make up its claimed trade dress. The exact level of precision required will no doubt vary from case to case and the specific trade dress alleged, but generally, the description offered must be sufficiently precise as to some specific combination of components present in the trade dress (such as materials, contours, sizes, designs, patterns, and colors) so as to permit courts and juries to

adequately evaluate the underlying claims at the appropriate juncture. And these articulation requirements apply regardless of whether the asserted trade dress derives from a line of products or from an individual product.

To be clear, a plaintiff may satisfy the articulation requirement even if the components described arguably render the trade dress overbroad, generic, not distinctive, or functional. In other words, a plaintiff that articulates the components of its trade dress with the requisite precision should not have its claims prematurely dismissed. Whether, once a plaintiff has met the articulation requirement, it has sufficiently pleaded the three elements of an infringement cause of action -- distinctiveness, likelihood of confusion, and nonfunctionality -- is a different question. The articulation requirement therefore achieves multiple aims: it permits courts to dismiss infringement claims before having to analyze the underlying merits if the alleged trade dress is impermissibly vague, while also ensuring that courts and juries have before them only those sufficiently precise trade dresses that will aid in their determination of the merits of an infringement claim. *See, e.g.*, *Yurman Design*, 262 F.3d at 117 ("We need not decide whether Yurman could formulate a description of design elements to support a trade dress claim sufficient to protect a line of Yurman jewelry,

because Yurman has not even offered one for our consideration.").  And

crucially, the requirement achieves these aims while ensuring that infringement

claims by plaintiffs who articulate the components of their trade dresses with the

requisite precision are not prematurely dismissed.

## III.    *Application*

We now turn to the instant case.  For the reasons outlined below, we

conclude that the district court erred by dismissing Cardinal's trade dress claims.

First, the district court erred by incorporating a distinctiveness

requirement into its articulation analysis.  In purporting to resolve whether

Cardinal articulated a trade dress with precision, the district court also observed

that "there is no precise expression of the trade dress if it amounts to a claim over

a general category of features," and then faulted the description as "so detailed

that it renders the claimed trade dress too broad."  *Cardinal Motors*, 2023 WL

6257938, at *4.  But that reasoning only holds under the distinctiveness analysis,

not the threshold articulation analysis.  *See id.* at *5 (concluding that "[Cardinal]'s

expression of the trade dress independently fails to allege how the features of

[T]he Bullitt are distinctive").  And as described above, a plaintiff satisfies the

articulation requirement by listing with precision the features that comprise its

trade dress -- distinctiveness, in other words, is not at issue at this juncture. *See* McCarthy, *supra*, § 8:3 ("[T]he discrete [components] which make up that [trade dress] must be separated out and clearly identified in a list."). Here, the General Trade Dress consists of several specific attributes, features, and design details of The Bullitt, such as a "curved top," "thin chin protector," "relatively large eyeport height (compared to the height of the chin protector)," "a single-level non-stepped chin bar surface," "a thin chin bar height substantially thinner than the eyeport," and "a large diameter pivot point escutcheon." App'x at 272-73; *see also* Appellant's Br. at 5-6. The components alleged thus appear to be particular features that together form a precise articulation of the trade dress, as opposed to "a general category of features," as the district court describes them. *Cardinal Motors*, 2023 WL 6257938, at *4. Because that articulation is sufficiently precise as to the specific combination of components that comprise The Bullitt's trade dress, we conclude that the General Trade Dress satisfies the articulation requirement. The district court not only erred in ruling otherwise but also in incorporating distinctiveness in that analysis. *See id.* at *5.[3]

---

[3]      It was also error for the district court to conclude that the General Trade Dress was insufficiently precise because Cardinal relied on "a mere mix-and-match comparison between certain features of The Bullitt and the other helmet designs" to allege The Bullitt's trade dress. *Cardinal Motors*, 2023 WL 6257938, at *5 (referring to

Second, we hold that the district court erred by dismissing the Detailed Trade Dress based solely on its dismissal of the General Trade Dress. *See id.* ("Because the [Detailed] Trade Dress rests in substantial part on the General Trade Dress upon which [Cardinal] fails to state a claim, the Court need not consider the sufficiency of the alleged [Detailed] Trade Dress separately."). That logic is backwards. To be sure, the Detailed Trade Dress contains substantively all of the components listed in the General Trade Dress. But dismissal of one trade dress based on the other would only make sense if the district court had concluded that the *Detailed* Trade Dress was insufficiently precise, thereby requiring dismissal of the *General* Trade Dress because it is the less inclusive of the two. The district court erred by doing the opposite and by failing to address the Detailed Trade Dress at all.

Third, even if the General Trade Dress does not satisfy the articulation requirement, we conclude that the Detailed Trade Dress does. In

---

comparison of other helmet designs at App'x at 275). In *Yurman Design*, we held that the alleged trade dress failed to meet the articulation requirement because the plaintiff merely argued that its trade dress could be discerned from a product line of eighteen different pieces, and it did not specify any component of its trade dress. 262 F.3d at 117-18. Here, even if, like Yurman, Cardinal relies on a comparison of features to allege the component of its trade dress, unlike Yurman, Cardinal provides the requisite list of the specific components that make up its claimed trade dress.

addition to the features enumerated in the General Trade Dress, it lists additional features like the "metallic reflective borderline near the forward opening" and "internal jig saw puzzle part V-shaped cheek pads with their combination of brown shiny leather and suede leather." App'x at 285. This detailed list of the components of The Bullitt's trade dress is more than precise enough to enable a court or jury to evaluate the elements of Cardinal's trade dress infringement claim and therefore satisfies the articulation requirement.

Although we conclude that Cardinal sufficiently articulated the features of its trade dress, that conclusion of course does not mean that Cardinal has pleaded a plausible trade dress infringement claim. On remand, the district court will have to address whether the TAC sufficiently pleads Cardinal's claims, *i.e.*, whether Cardinal has plausibly alleged the three elements of a trade dress infringement claim. Thus, while we have concluded that Cardinal offered a precise articulation of its trade dress, the question still remains whether Cardinal has pleaded, as a matter of law, that its dress is protectable. In other words, the district court on remand still must consider, based on the allegations in the TAC, whether the trade dress is distinctive, likely to cause confusion, and nonfunctional. *See Yurman Design*, 262 F.3d at 115-16; 15 U.S.C. § 1125(a). Our

holding is narrow in this regard, and the district court is free to consider the

other issues it outlined in its opinion -- namely, distinctiveness.[4]

## *CONCLUSION*

For the foregoing reasons, the judgment of the district court is

VACATED and the case REMANDED for further proceedings.

---

[4]      On remand, the district court should also address Cardinal's state law
claims of unfair competition.  We also note that Cardinal has invoked the district court's
diversity jurisdiction, which H&H does not appear to contest.  Therefore, even if the
district court were to ultimately dismiss Cardinal's federal claims on remand, the court
should nonetheless address whether it has an independent jurisdictional basis to
consider Cardinal's state-law claims and, if so, whether Cardinal has alleged sufficient
facts to support those claims.